UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Clinton Delaney, | Case No. 23-cv-1942 (PAM/DTS) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jesse Pugh, | |
| Respondent. | |

Petitioner Clinton Delaney was found guilty by a jury of second-degree intentional murder with additional aggravating factors. He was sentenced to 480 months in prison, an upward departure from the statutory maximum sentence. Delaney brings this *pro se* habeas petition pursuant to 28 U.S.C. § 2254 asserting that the trial court erred in allowing the state to introduce his cell phone records without proper foundation. He also alleges that the prosecutor misstated the presumption of innocence during opening and closing arguments, depriving him of his due process right to a fair trial. For the reasons discussed below, the Court recommends his petition be denied.

**FINDINGS OF FACT**

In June 2020, Petitioner Clinton Delaney was charged with one count of felony second-degree intentional murder based on the allegation that he shot and killed his girlfriend, A.J., who was pregnant with his child. *State v. Delaney*, No. A21-1737, 2022 WL 17748213, at *1 (Minn. Ct. App. Dec. 19, 2022), *review denied* (Mar. 14, 2023). Delaney's jury trial commenced in July 2021. *Id.* The prosecution began its opening statement with: "[A.J.] was murdered. [A.J.] was murdered. You will know who did it from the very beginning. It was this defendant, Clinton Delaney." *Id.* Delaney objected to the

statement, claiming it "stripped away the presumption of innocence." *Id.* The court offered to give a curative instruction, but Delaney did not propose one, and the trial continued. *Id.*

The evidence introduced at trial showed that on June 2, 2020, Delaney's fiancée learned A.J. was pregnant with Delaney's child. *Id.* The fiancée messaged A.J. and told her Delaney would never be there for her or her child. *Id.* That night, A.J. went to a friend's house with a knife and told her she was going to "slash a tire." *Id.* A.J. borrowed the friend's car to drive to a house where she believed Delaney was staying to give him money she owed him. *Id.*

A.J. texted Delaney that she would not drop off the money unless he was alone. *Id.* at *2. Delaney responded that he was "with Drake and Bertha, which were the names he had given to his guns." *Id.* Delaney watched through the window as A.J. arrived, but she did not get out of the car or put the money in the mailbox as they had agreed; according to Delaney, she "just left." *Id.* The last texts between A.J. and Delaney about the money were exchanged at 2:49 a.m. *Id.* Two minutes later, a 911 caller reported that they had heard a scream, multiple gunshots, and screeching tires. *Id.*

Police found A.J. dead of multiple gunshot wounds. *Id.* Police found her in the driver's seat of her friend's car, parked about a block and a half from the house where Delaney was staying. *Id.* A knife was on the passenger seat. *Id.* Delaney's car was found parked two blocks away, outside the house where he was staying. *Id.* There were multiple bullet holes in the hood of the car and its tire was slashed. *Id.* Police recovered 9-millimeter shell casings near Delaney's car. *Id.* Forensic testing determined the casings all came from the same gun. *Id.* Multiple witnesses testified they had seen Delaney with a 9-millimeter gun in the past. *Id.* A witness who was also staying at the house testified

she awoke the morning of the murder to hear Delaney telling the owner of the house that "he messed up and he killed [A.J.] and he shot her." *Id.*

An FBI Special Agent testified regarding Delaney's cellphone data. *Id.* Delaney objected to the admission of the data, arguing it was hearsay and lacked foundation because the prosecution was not calling the cellphone provider's custodian of records. *Id.* The state provided a notarized affidavit from the custodian of records identifying the data as business records. *Id.* The district court found that the evidence had foundation and was not inadmissible hearsay because it was self-authenticating and satisfied the business-records exception. It admitted the cellphone data. *Id.*

The agent explained that cellphone-site-location information provides data about when someone made a call and what cell tower was used. *Id.* This information can then be used to identify the general area where a call was made. *Id.* Based on this data, the agent testified that Delaney's cellphone was in the general area of the house and the parked cars at the time of A.J.'s murder. *Id.*

Before closing arguments, the court instructed the jury on the presumption of innocence. *Id.* at *3. The prosecution then began its closing argument with: "Like my colleague . . . said at the start, from the beginning of this case you've known who killed [A.J.], Clinton Delaney." *Id.* Delaney again objected, and the court instructed the jury: "Members of the jury, I'll remind you that you are the sole judges of determining whether the evidence has proven this case beyond a reasonable doubt." *Id.*

The jury found Delaney guilty of felony second-degree intentional murder. *Id.* It also found the presence of four aggravating factors: "A.J. was pregnant, A.J. was particularly vulnerable, the offense was committed with particular cruelty, and the offense

3

was more serious than a typical case." *Id.* Based on those factors, the state requested an upward-durational departure to Delaney's sentence, which the court granted. *Id.* The court sentenced Delaney to 480 months in prison. *Id.*

Delaney appealed his conviction to the Minnesota Court of Appeals, alleging that the district court erred by admitting his cell phone data without proper foundation, and the prosecution's statements during opening and closing arguments constituted prosecutorial misconduct that impacted the verdict. *Id.* The Court of Appeals first determined that admitting the cell phone data did not significantly affect the jury's decision because "the evidence of Delaney's guilt was strong, the cellphone evidence was not highly persuasive given its presentation by the agent, and Delaney had an opportunity to counter the evidence." *Id.* at *4. The court also rejected Delaney's argument that prosecutorial misconduct influenced the verdict, because "the two statements were effectively mitigated by three instructions by the district court that reiterated the presumption of innocence and burden of proof, with one even interjected in the middle of the prosecution's closing argument. As a result, any prejudice to Delaney or impact on the jury's understanding of the presumption of innocence was minimal or nonexistent." *Id.* at *5. Additionally, the prosecution had explained that the statements were a reference to the state's first witness, who "was going to tell the jury that she overheard Delaney admitting to the crime, so the jury would in essence 'know from the very beginning' that Delaney committed the crime through that witness's testimony." *Id.* n. 9. The Minnesota Court of Appeals affirmed his conviction. *Id.* at *6.

Delaney filed a petition for review with the Minnesota Supreme Court, which was denied on March 14, 2023. On June 26, 2023, Delaney filed a habeas petition with this

4

Court, raising two claims: (1) the state trial court admitted evidence without a proper foundation, thereby violating Delaney's constitutional right to a fair trial and to confront witnesses, and (2) the prosecution misstated the presumption of innocence by stating during opening and closing arguments that the jury would "know who did this from the beginning," thereby depriving Delaney of his right to a fair trial. *See* Dkt. No. 1.

## CONCLUSIONS OF LAW

Delaney's evidentiary claim is procedurally defaulted because he did not fairly present the federal issue to the state courts and cannot do so now. Delaney exhausted his prosecutorial misconduct claim, but because the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law, the claim fails on the merits. The Court recommends Delaney's habeas petition be dismissed.

### I.      Standard of Review

This Court's review of habeas corpus petitions filed by state prisoners is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(a) provides that a federal court shall entertain a habeas corpus petition of a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A federal court does not re-examine state court determinations of state law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A state prisoner's application for a writ of habeas corpus

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C § 2254(d).

The standard under § 2254(d) is "difficult to meet." *White v. Woodall,* 572 U.S. 415, 419 (2014). "'Clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *Id.* (quotations and citations omitted). A lower court may not consult its own precedent rather than that of the Supreme Court in assessing a habeas claim governed by § 2254. *Id.* at 420 n. 2.

A decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). An "unreasonable application" of the Supreme Court's holdings "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White*, 572 U.S. at 419 (quotations and citations omitted). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 419-20 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

### A.     Procedural Default

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity

to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotations and citations omitted). "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999). Thus, before habeas relief is available to a petitioner, a court must first determine whether the petitioner has fairly presented his federal claims to the state court. *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997).

A petitioner must have presented "the same facts and legal theories to the state court that he later presents to the federal courts. This allows the state court to apply the controlling legal principles to the facts that constitute the federal claims." *Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir. 1994). To fairly present a federal claim to the state courts, "a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999)).

If a petitioner has failed to do so, the federal court "must then determine whether the petitioner has complied with state procedural rules governing post-conviction proceedings, *i.e.,* whether a state court would accord the prisoner a hearing on the merits." *McCall*, 114 F.3d at 757*.* "If state procedural rules prevent the petitioner from obtaining such a hearing, then the petitioner is also procedurally barred from obtaining

7

habeas relief in a federal court unless he can demonstrate either cause and actual prejudice, or that a miscarriage of justice will occur if [the court] do[es] not review the merits of the petition." *Id.* The miscarriage of justice exception "is only available to a petitioner who demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 758 (quotations and citations omitted); see also *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). When a petitioner has not exhausted a claim and state procedural rules preclude further attempts to present the claim, that claim is not unexhausted but rather is procedurally defaulted.

## II.   Admission of Evidence Without Foundation

Delaney asserts that the district court erred when it admitted his cellphone records without a proper foundation. Because this evidence was used to "strengthen and discredit witness testimony and potentially place [him] at the scene of the crime," he argues, its admission violated his right to a fair trial and to confront witnesses. Dkt. No. 1 at 5. Respondent contends that Delaney failed to preserve the federal nature of this claim for habeas review because he made only state-law arguments in his state court proceedings.

Delaney's claim for relief cannot be considered on the merits in this federal habeas corpus proceeding because the federal claim has not been fairly presented to the Minnesota state courts. Delaney did not cite federal case law or refer to his rights under the United States Constitution on direct appeal of this issue. At the Minnesota Court of Appeals, Delaney alleged only that the trial court erred in its application of the Minnesota Rules of Evidence. Indeed, Delaney referenced federal law only to clarify that the Federal Rules of Evidence did not apply. See Dkt. No. 14-1 at 26 (arguing that "while the federal

rules of evidence authorize" certain exceptions to the hearsay rule, "the Minnesota Rules of Evidence do not"). After the Court of Appeals decided the issue on state law grounds, Delaney again distinguished between the state and federal rules in his petition for review with the Minnesota Supreme Court, where he acknowledged that the state rules—not federal law—were at issue. See Dkt. No. 14-1 at 42-46. Thus, Delaney did not properly present a federal issue in any of his state court proceedings.

Because Delaney could have raised the federal constitutional issue on direct appeal, he is barred from now raising it in a petition for postconviction relief with the state. See State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."). And "when a petitioner is barred by Knaffla from bringing such known-but-unraised claims in a state postconviction proceeding, they are procedurally defaulted." Browder v. Lakes, No. 15-cv-4071, 2016 WL 4032638, at *4 (D. Minn. Apr. 1, 2016), report and recommendation adopted, 2016 WL 4046713 (D. Minn. July 27, 2016). Accordingly, Delaney's evidentiary claim is procedurally defaulted.

The only remaining question is whether Delaney has demonstrated cause and prejudice sufficient to excuse the default, or that a fundamental miscarriage of justice will occur if the Court does not review the merits of his claim. See McCall, 114 F.3d at 757-58. Delaney has not explained the cause for his default, nor has he demonstrated that he was prejudiced as a result. Though he claims that he plans to raise new issues in state postconviction proceedings, these arguments were available to him on direct appeal, so he is barred from returning to state court to raise them now. See Knaffla, 243 N.W.2d at

741. Finally, Delaney has not asserted actual innocence as is required for the fundamental miscarriage of justice exception to apply. He therefore fails to show that the default should be excused. Because *Knaffla* would prevent Delaney from raising the federal issue in state court and he has not shown cause and prejudice to excuse the default, the Court recommends dismissing his claim that the trial court erred in admitting cellphone data without proper foundation. *See Browder*, 2016 WL 4032638, at *4.

### III.   Prosecutorial Misconduct

Delaney argues that the prosecutors stripped him of the presumption of innocence and deprived him of a fair trial when they stated during opening and closing that the jury would know "from the beginning" that Delaney killed A.J. *See* Dkt. No. 1 at 7. As a preliminary matter, this claim is not procedurally defaulted. Delaney fairly presented the federal nature of the issue in his brief to the Minnesota Court of Appeals. *See* Dkt. No. 14-1 at 32 (arguing that a criminal defendant has the right to a fair trial "[u]nder the state and federal constitutions"); *id.* at 36 (citing cases from the United States Supreme Court and the Eighth Circuit Court of Appeals regarding the presumption of innocence and the prosecution's burden of proof). He also presented it as a federal issue in his petition for review to the Minnesota Supreme Court, where he cited *In re Winship*, 397 U.S. 358, 263 (1970), for the axiom that a criminal defendant is entitled to a presumption of innocence. Though the Minnesota Court of Appeals did not rely on the federal constitution or cite federal cases in its opinion, the Court is satisfied that Delaney fairly presented the federal nature of this claim by "explicitly referr[ing] the state courts to the United States Constitution or federal case law." *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995);

*see Cox*, 398 F.3d at 1031. Because Delaney has satisfied the exhaustion requirement, the Court considers this claim on the merits.

"As a general rule, prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render [a] petitioner's conviction a denial of due process." *Louisell v. Dir. of Iowa Dept. of Corr.,* 178 F.3d 1019, 1023 (8th Cir. 1999) (quotations and citation omitted). A petitioner "must show that there is a reasonable probability that the error complained of affected the outcome of the trial— i.e., that absent the alleged impropriety the verdict probably would have been different." *Anderson v. Goeke,* 44 F.3d 675, 679 (8th Cir. 1995). "Federal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999)

The clearly established federal law relevant to this claim is *Darden v. Wainwright,* 477 U.S. 168 (1986), which held that a prosecutor's improper comments violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (quotations and citation omitted); *see Parker v. Matthews*, 567 U.S. 37, 45 (2012) (holding that *Darden* governs habeas review of a state court decision on a claim of prosecutorial misconduct). Courts consider three factors to determine whether prosecutorial misconduct rises to the level of a denial of due process: (1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) the curative actions taken by the district court. *See Graves v. Ault*, 614 F.3d 501, 508 (8th Cir. 2010) (citing *United States v. Beeks,* 224 F.3d 741, 745 (8th Cir. 2000)).

Delaney claims that the prosecution's statements stripped him of the presumption of innocence and influenced the jury to convict him based on those statements rather than the evidence presented at trial. Addressing this same argument, the Minnesota Court of Appeals evaluated whether the two statements "play[ed] a substantial part in influencing the jury to convict." *Delaney*, 2022 WL 17748213, at *5.[1] It considered the curative instruction the trial court gave during the closing argument, in which it reminded the jury that they were "the sole judges of determining whether the evidence has proven this case beyond a reasonable doubt." *Id.* at *3-5. It then weighed the potential prejudicial effect of the prosecutors' statements against the strength of the evidence presented at trial, finding that in "the context of the whole 11-day jury trial—where witnesses placed Delaney at the scene of the murder with access to a potential weapon and motive to kill A.J."—the statements did not impact the jury's verdict. *Id.* at *5. It concluded that "Delaney's right to a fair trial was not impaired by the prosecution's statements in their opening and closing because the jury's guilty verdict was surely unattributable to the statements, given the district court's curative instructions and the context of the whole trial." *Id.* at 6.

This Court has reviewed Delaney's allegations and cannot find that the prosecutors' statements were "so egregious that they fatally infected the proceedings and rendered [the] entire trial fundamentally unfair." *Mack v. Casper*, 92 F.3d 637, 643

---

[1] Federal habeas courts "assess the reasonableness of the 'last state-court adjudication on the merits of' the petitioner's claim." *Brown v. Davenport*, 596 U.S. 118, 141 (2022) (quoting *Greene v. Fisher*, 565 U.S. 34, 40 (2011)). Because the Minnesota Supreme Court denied Delaney's petition for review without issuing an opinion, this Court assesses the decision of the Minnesota Court of Appeals.

(8th Cir. 1996). Considering the weight of the evidence, the trial court's curative instructions, and the potential effect of the statements in the context of an 11-day trial, the Minnesota Court of Appeals reasonably determined that the statements did not deprive Delaney of the right to a fair trial. Accordingly, its decision was neither contrary to nor an unreasonable application of clearly established federal law, and the Court recommends this claim be dismissed.

### IV.     Motion to Compel Judgment and Motion to Stay

Delaney previously moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing that Respondent's failure to respond to his petition by the date ordered by the Court warrants judgment in his favor. Though the response was indeed filed late, "a default judgment and issuance of the writ of habeas corpus are not appropriate remedies for the failure of the respondent to file a timely response to the petition." *Ward v. Terrell*, No. 08-cv-837, 2008 WL 5273720, at *8 (D. Minn. Dec. 17, 2008), *aff'd*, 369 F. App'x 772 (8th Cir. 2010). "[F]ederal courts have routinely denied motions for judgment on the pleadings filed in § 2254 habeas cases as improperly filed." *Moore v. Stange*, No. 1:21-cv-114, 2023 WL 3790602, at *1 (E.D. Mo. June 2, 2023) (collecting cases). The Court recommends that Delaney's Motion to Compel Judgment, Dkt. No. 7, be denied.

Delaney also moves to stay this case so he may return to state court and exhaust any claims the Court deems unexhausted. Dkt. No. 19. When faced with "mixed" petitions containing both exhausted and unexhausted claims, a district court can stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust the unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). However, a stay should

only be granted if the district court determines there was "good cause for the petitioner's failure to exhaust his claims first in state court," and that the unexhausted claims are not "plainly meritless." *Id.* Thus, stay and abeyance is only appropriate where there is a mixed petition, the petitioner had good cause for failing to exhaust his claims in state court, and the unexhausted claims are potentially meritorious.

As discussed, Delaney's evidentiary claim is procedurally defaulted, and his prosecutorial misconduct claim is exhausted. Thus, this is not a mixed petition, and Delaney has no truly unexhausted claim which would justify staying this matter to allow him to return to state court. *See Maxwell v. Gau*, No. 12-cv-1770, 2014 WL 1371912, at *9 n. 3 (D. Minn. Apr. 8, 2014) ("The presence of a procedurally defaulted claim . . . does not create a mixed petition."). The Court recommends denying the Motion to Stay.

## V.   Certificate of Appealability

A § 2254 habeas petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability (COA). *See* 28 U.S.C. § 2253(c)(1); Rule 11(a), Rules Governing Section 2254 Cases in the U.S. District Courts. Federal district courts cannot grant a COA unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The issues raised in this petition are straightforward, and it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would treat Delaney's current habeas

petition differently than it is being treated here. The Court therefore recommends that Delaney not be granted a COA in this matter.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1. Clinton Delaney's Habeas Petition [Dkt. No. 1] be **DISMISSED WITH PREJUDICE**.

2. Delaney's Motion to Compel Judgment [Dkt. No. 7] be **DENIED**.

3. Delaney's Motion to Stay [Dkt. No. 19] be **DENIED**.

4. No certificate of appealability be issued.

Dated: April 23, 2024                     ____s/David T. Schultz_____
                                          DAVID T. SCHULTZ
                                          U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).